Learned Counsel. My name is Eric Solem. I represent Ms. Draper in this appeal. I'm going to address some of the federal law issues in this case. I've divided my argument with Mr. Lansman who is going to sit over here is going to address some of the South Dakota state law issues in this case. Our client, Ms. Draper was a passenger in an automobile driven by a drunk driver. She applied for and she received supplemental security income benefits and when her case was resolved in 2008, her parents established a trust with her lawyer Richard Casey, an attorney from Sioux Falls, South Dakota. The driver of the bulk of the settlement was contributed by her parents uninsured motorist policy for which they had paid premiums. Ms. Draper's parents signed a trust for her in 2008 and the money went into Mr. Casey's trust account and he put the money into the trust upon her instructions. One of the issues in this case is whether this trust was created or even funded with the power of a attorney. And if you look at the record, you'll see that it was neither created by a power of attorney and indeed the power of attorney did not authorize creation of a trust. Mr. Lansman is going to address that issue in a little more detail under South Dakota law. But even more importantly, the trust was not even funded through a power of attorney, although it gave the authority to fund it. The funding actually came directly from Mr. Casey's office in his trust account because he represented Ms. Draper individually. Isn't it true though that the parents could not have settled the case and accepted the money but for having the power of attorney? No, that's not true. Ms. Draper was a competent individual. She did not have a guardian and actually she signed and approved the settlement agreement herself. And I think that's an important distinction about this case. It's been the facts of this case. If you read the record for the administrative law judge, the record was fairly sparse on that particular issue. But if you look at in the record, you look at Mr. Casey's affidavit, Mr. Casey's letter, you get a better understanding of what actually happened. I'm going to make three points on the federal law issue. First of all, in our view, this trust, the statute, which is 1396PD4A, is not ambiguous and not unclear. In fact, what happened here is that in 1999, Congress passed rules on trust for the SSI program, but they incorporated previous rules that were set up in 1993 from the Medicaid program. And so there was a six-year history of administration and interpretation of these trusts by 50 state Medicaid offices. And our research shows us that none of these states found this statute unclear or ambiguous and none of these states interpreted this statute the way the this statute. So we have a six-year history of this before it hit the Commissioner's desk. The second point is is that Ms. Draper met all of the requirements for this trust. In fact, this is beneficial legislation specifically designed to assist disabled people. Ms. Draper is really no different than a lot of children who get injured in accidents, and these trusts are set up all the time. But in this case, I think it went off track because of, one, the power of attorney, and two, this issue of a seed trust, which kind of got interjected into the case later at the Appeals Council level. Indeed, if you look at the Administrative Law Judge decision, which this court reviews and the District Court reviews, the Administrative Law Judge found that if there had been no power of attorney, then the trust would have been valid under federal and South Dakota law. And if the power of attorney was not, in fact, used to create a trust or to even fund the trust, there really wasn't a power of attorney in the case. On what evidentiary basis did the ALJ conclude that the power of attorney was used? I think he simply looked at it. If you read the transcript of that hearing, there isn't any discussion about what was actually the purpose behind the power of attorney was. I didn't do the Administrative Law Judge hearing, but I've read the transcript over and over again, and I don't see anything really that addressed the issue of what really was the power of attorney used for. The problem I'm having, and this bleeds over into you want him to address the state law issue, but as I understand South Dakota law, they don't recognize dry trusts. It's not until the corpus is identified do we have a trust. So exactly how does the ... I mean, I understand you want to say the parents established the trust, but until the money's there, do we either have an invalid trust or ... So tell me how the money gets into the trust. We would disagree with you that South Dakota ... We would disagree with the notion that South Dakota does not recognize dry trusts. First of all, we think South Dakota law does. Mr. Lansman will address that, because we think that the issue is you create a trust, then the trust is funded, but it doesn't have to be funded simultaneously with creation of the trust. In other words, first funding. Parents don't have to first create and put their own money, even though it could only be like $10, according to the Commissioner, that that's not necessary. South Dakota doesn't have language authorizing a dry trust like Ohio or West Virginia, right? There's no specific statute, but there's case law, and basically the case law in South Dakota is that a trust has to have a creator, it has to have a trustee, it has to have property, but the property only needs to be reasonably identified. It doesn't have to necessarily come from the creator of the trust. Let me give you another example of this from the federal statute. How did the money, who put the money? Ms. Draper put the money into the trust. She authorized her attorney, Mr. Casey, he had the money in his trust account. The parents came in and signed the trust, and she consented to have the trust funded with the money in Mr. Casey's trust account. That's how it got funded. I think another important point about this is the government brief made a big issue about the D4C trust, which is the pool trust exception, and the D4A trust, which is the individual trust exception, and I government's brief, they said... Your time is up, why don't you finish your sentence? I'll finish my sentence. Basically, Congress used the word establish in both trusts, both trust exceptions. Establish means, in the pool trust, established by the nonprofit organization, and in the D4A trust, established by an individual parent, guardian, court, or grandparent. And so, when Congress uses the word established, they don't mean that these individuals have to fund the trust. Obviously, a nonprofit association that creates a trust doesn't fund it. It's funded with assets of the individual, and I think that's a key distinction, and I'll yield the balance of my time, whatever I have left. I have no time left. Thank you very much. You owe us some time. Thank you. May it please the court, my name is Ron Lansman, and I represent the Yamiki here at the Special Needs Alliance and the National Academy of Elder Law Attorneys. Let's talk about the state law issue. Mr. Solomon has discussed the federal statute, but you'll see that they're interwoven in a very different way. Everyone agrees, and the Commissioner agrees, that whether or not a trust was established is first a question of state law, and indeed the Commissioner relies only on state law to argue that the trust was or was not established. To clarify the government's brief, there are two theories, and only two theories, under which Stephanie created the trust. Either the power attorney specifically authorized her parents as her agents to create a trust, or they used the trust to fund, they used the power attorney to fund the trust. The first theory is inconsistent with South Dakota law. South Dakota law says you look at the power attorney specifically. This power attorney authorized funding and communicating with the trustee. It did not authorize creation of a trust. That's an important distinction in trust in the state law. You know, when you create a trust, you're doing things that go to what happens with the money after you pass away. It has a whole series of other consequences. So powers of attorney either give you control over assets, creating a trust is a different animal. In its brief, the Commissioner does not defend the ALJ's position on that ground, and gives up on it. So the other theory is the first funding theory. The power attorney is actually not important for this. The position is that because Stephanie funded the trust, she was the settler of the trust and the creator of the trust. So let's look at South Dakota law first. And let me draw the contrast. In my own state of Maryland, we now have a new statute that says to establish, to create a trust, you either have to transfer property or impose a limitation on property that you own. The South Dakota statute, by contrast, says you have to identify property with a reasonable certainty. Now, the Commissioner characterizes that as less precise than the other statutes, the Uniform Trust Act. Can you explain how the creators of the trust anticipated they were going to use the funds? Well, they certainly anticipated that they created the trust for the very purpose of receiving these funds, and they refer to it as the anticipated corpus of the trust. Was the purpose to prevent the government from taking some of the funds to maintain the daughter? I'm sorry, Your Honor, I don't... Was the purpose of the trust so that the state would not be able to take money? Yes, the purpose of the trust was to... The purpose of the trust, as envisioned by Congress, was to allow Stephanie to retain these resources to supplement the benefits she could get for Medicaid and SSI. As a 20 year old, unable to work for the rest of her life, the half million dollars that was available was, frankly, not much to provide housing and shelter for 40 or 50 years. So that was Congress's very purpose, and that's what the parents were trying to achieve. So the first... So I think as a matter of South Dakota law, it doesn't recite, as some states do, that you have to have property. Either transferred or in possession of. It does say you have to identify the subject, and the subject is the corpus, right? Right. Identify, and it was identified. The trust referred to the anticipated settlement, and there's nothing in South Dakota law that suggests that it requires more. Okay. But let me go a step beyond this, and this is something I did not elaborate on in the brief, so in my remaining two minutes, I'm gonna have to cover a key point. That's a polite way of saying, listen up, because this is really quite important, Your Honor. The first funding rule upon which the commissioner relies comes from historical trust law, which involves a person who owns property imposing limitations on it. The first funding rule controls when the trust comes into existence when a single person has control over property. And I don't... Some states allow dry trust, and some states don't. We don't dispute that. But the law is also quite clear that that rule doesn't address who creates a trust when two people both fund it. This is a crucial distinction, Your Honor. I'm gonna draw your attention to Uniform Trust Act, section 103, paragraph 15, and the restatement third of trust... You're not saying two people funded it here, are you? I'm addressing the commissioner's argument. They're saying it would be okay if it was a C trust, if the parents had put in $10 and Stephanie had put in $500,000. Right. And state trust law... I'm sorry, let me go back, finish. You're saying under South Dakota law, the parents established the trust by  themselves. And I wanna take it a step further. Even if you don't agree with me on that, and I wanna make a more general point about how to understand the federal law, I wanna say the first funding rule has to do with traditional trust law that says acts who has property is gonna limit its use, has power over it. The law is if two people put property into a trust, they are both the settlers of the trust. They are both the creators of the trust. That is traditional trust law. Do you wanna have a wrap up sentence? Yes. That being the case, then even under proper application of state law, the federal statute becomes an impossibility. Because the moment Stephanie funds the trust, she's a settlor of her portion of the trust. That is the proper reading of state law. First funding doesn't apply to that situation. Let me just finish. My citation was to... Restatement third, section 58, comment E. And that's a very authoritative authority. That being the case, and I wanna just... It's a long answer, but please forgive me. To connect it up to the federal statute, the point is the commissioner has gone looking for state law, and the interpretation of state law leads to an impossibility under the federal statute. And as Mr. Solem noted, Congress used the word established  under President of the First Maryland Disability Trust, a D4C trust back in Maryland. We never dreamed we would put our own money into a trust account to establish the trust. And Social Security has never challenged the validity of any of our accounts because they weren't funded by someone besides the contributor. Thank you, Your Honor. I appreciate your indulgence very much. Mr. Coloner. Thank you, Your Honor. May it please the court. I'm Kevin Coloner from the US Attorney's Office in South Dakota, and I'm here representing the agency today. We are asking that the district court's memorandum order be affirmed in all respects. And looking at this, there's obviously a lot of minutia. And I sit here thinking that at certain points, I feel like we're passing like ships in the night, in the briefing and in some of the arguments. And I think that's in part reflective of why the Social Security Administration has been given such broad deference by Congress and also by the US Supreme Court in interpreting this incredibly complicated act that oversees the adjudication of millions of complicated disability claims. One factual point I'd like to make here, today's the first time that I've heard that Stephanie Draper was the one who was signing off on the settlement agreement. The ALJ or the AR record is cited... That came as a surprise to me too. Yeah. I thought that that was clearly done through the power of attorney, but... And I think that's what the record says. I didn't bring the whole administrative record with me, but I did cite it in our brief at page four, pages 167 through 71 and 271 through 72. John Draper signed on behalf of Stephanie Draper on February 12th, 2008, as related to the personal injury claim. Now... She did not sign a settlement agreement? I don't know if her signature appears on it. I know the father's signature appears on the settlement agreement as... I didn't think there was any dispute that they were signing under the power of attorney on the settlement agreement regarding the adult's funds. In other words, there'd be no reason... She signed it, there'd be no reason for the... As long as she's competent, there'd be no reason for the... Right. And there's no dispute that she's a competent adult. So there's no reason for a parent to sign a settlement agreement unless they were acting under the power of attorney that day. February 12th, 2008, the very same day, I think there's no dispute, they were acting under the power of attorney for one purpose, is the very same day that the trust is also established. So the position of the plaintiffs is that they were wearing the power of attorney hat at one moment while going through paperwork in the lawyer's office, presumably, but then suddenly everything switched and it was Ms. Draper acting on her own for the other purposes of establishing the trust. That's the conundrum that was faced on various levels now, up to the district court and now here, about exactly what did Congress say about this sort of moment when there's a parent acting in two capacities. No dispute that these are the biological parents of Ms. Draper, no dispute that the statute does give an exception for parents, but the statute doesn't speak to parents acting as power of attorney. Now... Counsel, does the record show that the nature of this trust, is it irrevocable or revocable? I believe it's an irrevocable trust, but I also believe that under South Dakota law, the record's clear that it could have been revoked and started. Could it still be? I believe so, yes. Could they retry to do this? Yes. And I think Social Security's position from the very beginning, when it was first reviewed and rejected by the administrative law judge, in fact, decided without fault at that point, was that this could be fixed. Under the POMS regulations, it could be fixed with a valid seed trust. We've... It's a lot cheaper than litigating all this. Well, that's our view, and I'm sure the court might wonder, well, why are both sides playing chicken all the way up to the 8th Circuit Court of Appeals? That crossed my mind. Yeah. We have a reason to play chicken here, which is that we have to administer, we, the agency, has to administer this incredibly complicated rule set across the nation, and so do we sometimes, does the agency sometimes adopt form over function rules as the nature of a bureaucracy? Yes, they do. And it's because if they don't, then it's very difficult to effectively inefficiently administer a system this large. What the plaintiffs are asking for here, in our view, is that the agency adopt a rule that says, well, if you're close enough, we'll approve these benefits. A close enough gray line is not the sort of thing that Social Security Administration, overseeing 8 million some claims, can apply uniformly. And, of course, that's the notion that has been reflected in various Supreme Court cases, Barnhart v. Thomas, Barnhart v. Walton, the Chevron decision. And also, of course, in the Congress's words itself, in the statute giving broad deference to Social Security Administration, the agency has that role to interpret this statute. Let me see if I can parrot back what I think is their argument, and you tell me where it falters. Okay. I think they're saying that under the South Dakota statute 55-1-4, all they have to do is reasonably identify the subject matter, and that the parents did that because, number one, the trust... The power of attorney doesn't authorize them to create a trust. The appearance on the trust isn't that they're acting... It appears that they're acting on their own. It doesn't say, by the power of attorney, we're setting this up. Right. And they did identify, they may not have funded it, but they at least identified it's gonna be funded with the exact dollar amount of the settlement. So therefore, the parents have created the trust, and that she... It now sounds like they're saying she was the one who actually, without them using the power of attorney, settled the case and funded it. If that's true, isn't their argument good or not? No, in this respect. I think our position is that the dry versus seed trust is in itself sort of a red herring here. The Social Security Administration has to administer the act, which talks... Which has these two subsections and involves the question of whether an individual herself established a trust versus another subsection, the pooled subsection, which allows an individual herself. So given that, if it's a dry trust established by the individual, I think the administration's position would be the very same. Okay, but so how is it established by the individual here, given my description of how the parents did it, or my understanding of the... And I think where I kinda found the... Well, where I find the argument a bit off is the sense that I don't believe the facts support that the parents... That Stephanie herself established this trust. And that dovetails back to the power of attorney discussion. The act itself defines individual. Where do I go wrong? Because I think the power of attorney doesn't authorize them to establish a trust, or does it? Well, the power of attorney itself has language about... And what are the indications when they actually establish the trust, that they're doing it pursuant to the power of attorney? Well, let me phrase it like this. The parents could not have established and funded this trust without a power of attorney. No one disputes that this is an adult disabled individual who is competent and capable. So the parents could not have taken her money and placed it into a trust without the power of attorney. And I think they're saying she did it. And if she did, then it's an individual establishing her own special needs trust. Not necessarily. If you read this the way they wanna read it, the Iowa Code, it just says, in order to establish the trust, an express trust, you have to identify with some certainty what the subject is. And they say they attached, I think it was Exhibit A, that says it's gonna be 451,000, whatever the number was, that matches the settlement proceeds. And now they're saying that Stephanie made the transfer. So why haven't the parents, by identifying with reasonable certainty, the subject of the trust, and signing these trust documents that don't say pursuant to power of attorney, why at that point haven't they created it, and then she subsequently funds it? Without, at least the way they're representing it to me, without the power of attorney, she did. Again, our view is that the South Dakota Dry Trust versus Seed Trust distinction is somewhat of a red herring because the Social Security Administration still had to determine how these statutes match up with these facts. The statute does not allow an individual to establish her own special needs trust. And so whether the parents establish a dry trust or not, the Social Security Administration is still interpreting whether or not the individual has established the trust, in which case it wouldn't fit this particular exception. Okay, so what's the argument that the individual established the trust then? Well, it's to the penny the amount that she received that day for her personal injury claim. There was a power of attorney in place under which the parents signed. You keep saying the dry trust, wet trust thing is a red herring, but if it were West Virginia or one of the places that clearly allows a dry trust, wouldn't this procedure have been fine? And therefore, why is it a red herring? Yes, I believe it would have been fine. And why is it a red herring? You're losing me on that. Well, it's a red herring in the sense that we're still interpreting whether it was the individual who funded this. And I think what Social Security has done is carved out this exception for those states that do have the dry trust. And I guess I'm seeing your point. Social Security's view of South Dakota state law is encompassed in one of the POMS regulations called the Stephanie Trust POMS. And their view is that South Dakota is not a dry trust state, so that this was... Okay, what's the... Because I still... I don't think it's a red herring. Okay. What's the best evidence or best case that you have that South Dakota doesn't recognize a dry trust? In other words, before it's recognized, it actually has to be funded, not just identify the corpus. Yeah, and I don't have a case site for you off the top of my head. I think it's in the POMS regulation, the Stephanie Trust. I wanna say it's the Higgins case, but I'm going off the top of my head here. Because I have to... I initially read it the same way, that South Dakota doesn't identify, doesn't allow dry trust. But when I look at the words a little closer, it just says, with reasonable certainty, identify the subject. Right. And that seems to me a little bit different than saying, hey, there's no trust until you actually fund it. And I would submit to the court that if this is an issue that the court feels rests on this question of South Dakota law, it may be an issue that would suggest a certification of the question to the South Dakota Supreme Court. I know it's not my place to suggest that, but if that is where the court comes out, that it's a question that rests on South Dakota's interpretation and there's no cases directly on point. And I don't believe there's a case directly on point with this particular scenario. I mean, it may be that if you take a look at this a little closer and agree with that sort of reading, it may be that your client would be willing to say, okay, this is fine. I know that... I know you wanna hold the line for future cases, but if that's a reasonable reading of this, maybe you can resolve it. I know that the client, in the sense the agency has looked at this and has spelled out its position on it in the Stephanie Palms and has come to the conclusion that South Dakota law does not allow for a dry trust. Okay. I mean, either that or convince me that it's a red herring, because right now I don't see how it's a red herring. The other questions that the district court dealt with and determined were ambiguous here, were the questions of whether it was parents acting as parents or as power of attorney and this term established. And our view is that the district court got this right and getting this right, finding that it was ambiguous, that Congress had not spoken to it. Then it is not the reviewings court place to speculate on the policy or wisdom or scope of the agency's interpretation so long as it reflects their expertise and authority. And that comes from the Barnhart v. Walton case. And so if there is an ambiguity, if Congress has not spoken directly to this, and I think the question asked specifically by the US Supreme Court is, does the statute unambiguously forbid the agency's interpretation? And I think when you look at this statute, especially how the two related subsections interplay, the pooled trust subsection versus this special needs trust subsection, the court can't reach any other conclusion that Congress did not speak to this, and so the agency is filling in the gap here and has the right to do so and deserves some deference. I have a few more seconds left if there's any questions from the court. If not, I'll take my seat. Thank you. Thank you, both sides. We'll give it further consideration. Thank you.